IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND, )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, THE CHICAGO )
LABORERS' DISTRICT COUNCIL RETIREE )
HEALTH AND WELFARE FUND, ) Case No. 19 C 4114
CATHERINE WENSKUS, not individually but )
as Administrator of the Funds, )
             )
      Plaintiffs, )
v. )
             )
ABARI CONSTRUCTION, INC., an Illinois )
corporation, )
             )
      Defendant. )

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy Carollo, G. Ryan Liska, Katherine C.V. Mosenson, and Sara Schumann, and for their Complaint against Abari Construction, Inc., state:

### COUNT I

### (Failure to Submit Benefit Contributions)

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, and 29 U.S.C. §185(a), 28 U.S.C. §1331.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Abari Construction, Inc., (hereinafter collectively referred to as "Abari" or the "Company") is an Illinois corporation and at all times relevant did business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). At all times relevant herein, the Union and the Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2017 (A true and accurate copy of the Independent Construction Industry Collective Bargaining Agreement signed by the Company which adopts and incorporates the various area-wide collective bargaining agreements and the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A).

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Industry Advancement Fund ("IAF"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the

Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. The Company is obligated to pay between 10% liquidated damages on late-paid contributions, 20% liquidated damages on late-paid, Pension, Welfare, Retiree Welfare and Training Fund contributions, plus interest at a rate of 12% from the date the contributions were due until the contributions are paid.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust requires the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11. The Company submitted but failed to pay its March through April 2019 reports. The reports show the following amounts owed:

(a) benefit contributions totaling $50,996.50 due to the Laborers' Pension Fund for the March through April 2019 reports;

4

(b) benefit contributions totaling $41,178.56 due to the Laborers' Welfare Funds of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of March through April 2019 reports;

(c) benefit contributions totaling $19,270.76 due to the Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of March through April 2019 reports; and

(d) benefit contributions totaling $2,921.04 due to the Laborers' Training Fund for the March through April 2019 reports;

The Summary of Amounts owed is attached as Exhibit B.

12. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company owes $22,873.37 in liquidated damages plus $2,203.48 in interest on the March and April 2019 benefit reports. *See* Exhibit B.

13. The Company's actions in failing to submit timely payment of benefit contributions reports violates Section 515 of ERISA, 29 U.S.C. §1145.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Abari Construction, Inc. as follows:

a. entering judgment in favor of the Funds and against Defendant for the amounts owed on the March through April 2019 reports, specifically in the amount of $139,443.71 in unpaid contributions, liquidated damages, and interest plus Plaintiffs' reasonable attorneys' fees and costs on late and unpaid contributions from the period of March and April 2019; and

5

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure to Timely Pay Employee Benefit Contributions)

14. Plaintiffs reallege paragraphs 1 through 13 of Count I.

15. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the months of May 2019 forward, but has:

(a) failed to submit reports and contributions to Plaintiff Laborers' Pension Fund for the period of May 2019 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of May 2019 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to submit reports and contributions owed to Plaintiff Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of May 2019 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to submit reports and contributions to Laborers' Training Fund for the period of May 2019 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e) failed to report and pay all contributions owed to one or more of the other affiliated funds identified above for the period of May 2019 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

16. Company's actions in failing to submit timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

17. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Abari Construction, Inc. as follows:

a. ordering the Company to submit benefits reports and contributions for the time period of May 2019 forward;

b.     entering judgment in sum certain against the Company on the amounts due and owing pursuant to the amounts pleaded in the Complaint, the May 2019 forward reports, if any, including contributions, interest, liquidated damages, and attorneys' fees and costs;

c.     ordering Abari to submit its books and records for a fringe benefit and Union dues compliance audit upon demand;

d.     enter judgment in sum certain against Abari on amounts due and owing pursuant to the audit, if any, including interest, liquidated damages, audit cost and attorneys' fees and costs; and

e.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure To Submit Reports and Pay Union Dues)

18.    Plaintiffs re-allege paragraphs 1 through 13 of Count I and paragraphs 14 through 17 of Count II.

19.    Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

20.    Dues reports and contributions are due by the 10th day following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

8

21.    Notwithstanding the obligations imposed by the Agreement, Company has performed covered work during the months of May 2019 forward and has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of May 2019 forward, thereby depriving the Union of income and information.

22.    Pursuant to the Agreement, Company is liable to the Funds for the unpaid union dues, as well as liquidated damages, interest, accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Abari Construction, Inc.:

    a.    ordering the Company to submit its May 2019 forward reports and dues;

    b.    ordering the Company to submit its books and records to an audit upon demand;

    c.    entering judgment in sum certain against Abari on the amounts due and owing, if any, as revealed by the reports to be submitted, including dues contributions, liquidated damages, accumulated liquidated damages, interest, audit costs, and attorneys' fees and costs; and

    d.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

June 19, 2019                                            Laborers' Pension Fund, et al.

                                                                 By:   /s/ Amy Carollo

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

CONSTRUCTION AND GENERAL LABORERS DISTRICT
COUNCIL OF CHICAGO AND VICINITY

MEMORANDUM OF JOINT WORKING AGREEMENT

It is hereby stipulated and agreed by and between   Abari Construction, Inc.
-------------------------------------, herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, and 1092, and encompassing the geographical areas of the Counties of Cook, Lake, Du Page, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. The EMPLOYER hereby recognizes the UNION as the sole and exclusive bargaining agent for all laborers employed by the EMPLOYER in the geographical areas listed above with respect to their wages, hours of work, fringe benefits and all other terms and conditions of employment.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Employing Plasterers Association of Greater Chicago, Concrete Contractors, Chicago Building Wreckers Association, Lumber Yard Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Employing Plasterers Association of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendments thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreement in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to strike or to take any other lawful action, including all remedies at law or equity.

ABARI CONST.

**EXHIBIT A**

5. In the event of any change in the ownership, management, or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The previously negotiated wage rates as evidenced in the various Collective Bargaining Agreements shall be increased retroactively to June 1, 1976 as follows:

| | |
|---|---|
| June 1, 1976 | Sixty cents ($.60) increase as a payment of wages. |
| October 1, 1976 | Fifteen cents ($.15); five cents ($.05) additional increase as a payment of wages; ten cents ($.10) to be applied toward a dues check/off. |
| June 1, 1977 | Sixty cents ($.60) to be allocated by the UNION between wages, benefits, and/or checkoff as the UNION in its sole discretion shall provide. |
| June 1, 1978 through May 31, 1979 | Sixty-five cents ($.65) additional to be allocated by the UNION between wages, benefits, and/or check-off as the UNION in its sole discretion shall provide. |

All additional wage rate, dues checkoff, or fringe benefit increases as negotiated after May 31, 1979, shall be incorporated in this Memorandum of Agreement.

7. Effective October 1, 1976, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of ten cents ($.10) for each straight-time hour worked and ten cents ($.10) for each overtime hour worked, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month next following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c) (4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1979, and shall continue thereafter unless there has been given not less than sixty (60) days' written notice by registered or certified mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract.

DATED at _____ this __6th__ day of __October__, 19__78__

ACCEPTED:

Laborers' Local Union # _____                      Abati Construction, Inc.
                                                    _____
                                                         (Employer)
BY: _____                      BY: _Miguel DiGioia_, _President_
                                                         (Name & Title)

CONSTRUCTION AND GENERAL LABORERS'                  3 N 445 Route #53
DISTRICT COUNCIL OF CHICAGO AND                     _____
VICINITY                                                    (Address)

BY: _Joseph J. Spingola_                            Addison, Illinois 60101
    Joseph Spingola, President                      _____
                                                           (Telephone)
BY: _James Caporale_                                312-620-1310
    James Caporale, Secretary

5. In the event of any change in the ownership, management, or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The previously negotiated wage rates as evidenced in the various Collective Bargaining Agreements shall be increased retroactively to June 1, 1976 as follows:

| | |
|---|---|
| June 1, 1976 | -- Sixty cents ($.60) increase as a payment of wages. |
| October 1, 1976 | -- Fifteen cents ($.15); five cents ($.05) additional increase as a payment of wages; ten cents ($.10) to be applied toward a dues check/off. |
| June 1, 1977 | -- Sixty cents ($.60) to be allocated by the UNION between wages, benefits, and/or checkoff as the UNION in its sole discretion shall provide. |
| June 1, 1978 through May 31, 1979 | -- Sixty-five cents ($.65) additional to be allocated by the UNION between wages, benefits, and/or checkoff as the UNION in its sole discretion shall provide. |

All additional wage rate, dues checkoff, or fringe benefit increases as negotiated after May 31, 1979, shall be incorporated in this Memorandum of Agreement.

7. Effective October 1, 1976, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of ten cents ($.10) for each straight-time hour worked and ten cents ($.10) for each overtime hour worked, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month next following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1979, and shall continue thereafter unless there has been given not less than sixty (60) days' written notice by registered or certified mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract.

DATED at Addison, Illinois this 24th, day of October, 1978.

ACCEPTED:

Laborers' Local Union # _____   Abari Construction, Inc.
                                 (Employer)

BY: _____                        BY: /s/ Miguel DiGiola, President
                                      Miguel DiGiola

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND    3 N 445 Route #53, Addison, Illinois
VICINITY                           (Address)

BY: /s/ Joseph J. Spingola         312-620-1310
    Joseph Spingola, President     (Telephone)

BY: /s/ James Caporale
    James Caporale, Secretary

# HEADQUARTERS OF
# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

## MEMORANDUM OF JOINT WORKING AGREEMENT

It is hereby stipulated and agreed by and between _____ABART CONSTRUCTION INC._____ hereincalled the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1002, 1006, 1035, and 1092, and encompassing the geographical areas of the Counties of Cook, Lake, Du Page, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncoerced majority of each Employer's laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1980, together with all amendment thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage rates as evidenced in the various Collective Bargaining Agreements shall be increased June 1, 1986 as follows:

June 1, 1986  
May 31, 1987  
  Sixty (.60¢) cents increase in the Hourly Scale. (From $14.20 per hour to $14.80 per hour)  
  Welfare contributions remain the same at One Dollar Thirty-two ($1.32) cents per hour to the Health and Welfare Fund.  
  Pension contributions remain the same at One Dollar Thirty ($1.30) cents per hour to the Pension Fund  
  MCIAF remains the same at $0.02 Cents per hour.  
  Training Fund Contributions are to be paid at Five Cents (.05¢) per hour.  
  Dues Deduction is .20¢ per hour for each hour worked (.20) cents.

June 1, 1987 -  
May 31, 1988;  
  A Fifty Cents (.50¢) per hour increase into wages bringing base rate to $15.30 and an additional Five Cents (.05) into Training fund bringing the total to Ten Cents (.10) per hour existing Fringe Benefits and Dues Deduction remain unchanged.

June 1, 1988 -  
May 31, 1989;  
  There is an Eighty Cents (.80) increase per hour to be allocated between wages and benefits.

All additional wage rate, dues checkoff, or fringe benefit increases as negotiated after May 31, 1986, shall be incorporated in this Memorandum of Agreements.

7. Effective June 1, 1986 all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty Cents ($.20¢) for each straight-time hour worked and Twenty Cents ($.20) for each overtime hour worked, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c) (4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1989 and shall continue thereafter unless there has been given not less than sixty (60) days nor more than ninety (90) days from the expiration date written notice by registered or certified mail, by either party hereto, of the desire to modify and amend this Agreement through Negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at _____CHICAGO, ILLINOIS_____ this ____7TH____ day of __DECEMBER__ , 19__87__

ACCEPTED:

Laborers' Local Union No. _____

By _____

CONSTRUCTION AND GENERAL LABORERS'  
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By _____  
  Ernest Kumerow, President  Business Manager

By _____  
  Joseph A. Lombardo, Jr., Secretary-Treasurer

ABART CONSTRUCTION INC.

By _____MIGUEL D_____ PRESIDENT  
  (Title)

4539 NORTH ANTHON AVENUE, CHICAGO  
(Address)

312-625-3875  
(Telephone)

[ TRUST FUND ]

6/18/19

# LABORERS' PENSION & WELFARE FUNDS

SUMMARY SHEET   3/19, 4/19 REPORTS

EMPLOYER   ABARI CONSTRUCTION, INC.

FIELD REP   JF

CODE   10204

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| MONTH | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/19 | 1,919.50 | 19,482.93 | 10.15 | 9,117.63 | 4.75 | 24,128.12 | 12.57 | 1,382.04 | 0.72 | 54,110.72 |
| 4/19 | 2,137.50 | 21,695.63 | 10.15 | 10,153.13 | 4.75 | 26,868.38 | 12.57 | 1,539.00 | 0.72 | 60,256.14 |
| SUBTOTAL | 4,057.00 | 41,178.56 | | 19,270.76 | | 50,996.50 | | 2,921.04 | | 114,366.86 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | |
| 20% LIQUIDATED DAMAGES | | 8,235.71 | | 3,854.15 | | 10,199.30 | | 584.21 | | 22,873.37 |
| AUDIT COSTS | | | | | | | | | | |
| ATTORNEY FEES | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | |
| ACCUM. INTEREST | | 905.45 | | 438.69 | | 812.78 | | 46.56 | | 2,203.48 |
| TOTAL DUE | | 50,319.72 | | 23,563.60 | | 62,008.58 | | 3,551.81 | | 139,443.71 |



EXHIBIT B